Good morning your honors. My colleague Andrew Frisch and I represent Omar Lopez Castro. The first issue that I'd like to address is the admission into evidence of our client's prior conviction for a drug offense. Not only the fact that he had a prior conviction, but that it was for a drug offense that was the same offense he was on trial for. The district court ruled and gave a limiting instruction that the evidence of the prior conviction could only be considered background evidence. To show a basis for trust between the three individuals, Guzman, the government's cooperating witness, a gentleman named Lester Marquez, I call him Lester, and Mr. Lopez Castro. This is really a question for your adversary, but maybe you want to comment on it. I don't see how the conviction corroborates the issue of trust. The trust was based on statements that were made to the cooperator by the defendant. You were prepared, as I understand it, to stipulate that he had been in jail and had taken other steps consistent with what the cooperator said. It's totally puzzling to me what the relevance of the conviction was, let alone its prejudice. The defense attorney was prepared to stipulate because knowing the actual offense was so much worse than just that there was a conviction. But I agree. Do you agree that the admission, or at least there is a stronger argument for the admission of the motion for relief from supervised release, because that corroborates the testimony that he went to the Dominican Republic after he was allowed to do that, right? Yes. As I read the transcript, the introduction of the prior conviction is kind of mentioned briefly on the way to getting to the motion for relief from the sentence of supervised release. And it doesn't play a huge role in the arguments. So I guess my question is, why wouldn't it just be some piece of context for introducing the motion for relief from supervised release to explain that he was in jail before, even if they might have not mentioned what the charge was that ends up being harmless? I think there were three documents, the first of which was the judgment of conviction, and which stated what the prior conviction was for, which was narcotics trafficking. And then there was the supervised release docket sheet, and there was, I'm sorry, I'm blanking on what the third one was, but I would strongly, and I would stress that that one piece of paper that says conviction of the crime of narcotics trafficking was, as far as the government was concerned, was gold. And I believe that's why the jury convicted him in two ways. Well, you believe that's why it was, but I mean, you know, how would we know that? There's lots of other evidence. They don't really refer to the prior conviction as evidence of his guilt here. I mean, I'm looking at the transcript where they're going through the government's Exhibit 270, and they go down the docket. They're like, okay, he pleaded guilty to count one. They do say what the nature of the offense was, but then they just keep going down to the sentence for supervised release on their way to explaining that he moved for relief from the supervised release. Maybe, you know, they shouldn't have had that one sentence explaining the nature of the offense, but, you know, if we thought that it was the context for something that clearly wasn't visible, which was the motion for relief from the supervised release, what is the evidence that, what is the basis of your belief that that was the only reason the jury would have convicted him for narcotics trafficking? Because you have, basically, it's a one witness case, and he's got a, the witness has a lot of baggage, and the jury would have to go back and determine whether they believed him. Also, wasn't it a fact that the prosecutor repeatedly referred to this on summation? For example, at page 534 of the transcript, 121 of the appendix, the prosecutor says, quote, you've seen court records about the defendant's prior conviction for trafficking cocaine from Puerto Rico to New York, period. That's the whole sentence. And there are other places where she repeatedly refers to him as a drug trafficker and so forth. So if it had been lost earlier, it certainly wasn't lost on the jury during summation, was it? It was not, and I couldn't have said it better. And I think the focus, what was especially bad, was the focus on he is a drug trafficker, he's a drug trafficker. The case wasn't about a moniker. It was about what did he do? Well, a lot of those, I mean, you know, the full context of that, the government says in submission, the evidence is now in, and it points overwhelmingly to one conclusion, the defendant, Omar Lopez Castro Cash, is guilty. He is a drug trafficker. He paid the people who handled his shipments, and he kept his profits, and he lived a lavish lifestyle with his profits because the defendant is a drug trafficker. I mean, it does seem like when they say he's a drug trafficker, they're referring to a conclusion about his conduct in this case as opposed to his prior conduct, at least maybe on most of those references. So is the one that Judge Rakoff mentions what you think the clearest example is where they're talking about his prior conviction? Yes, but I also think that it is like a sonic boom. I state myself by saying that. It's, you know, it's like if you have a company, a pharmaceutical company has drug trials, and they have a control group, and they have the group that receives the real medication, and you tell, and they decide they're going to tell the control group that they're getting a placebo. The game's over. You can't, the whole, there's no reason to go any further if they know that it's a placebo. So the analogy I'm making here is really, people, I don't believe in. That argument just implies that whenever you have evidence of a prior conviction, like it automatically is prejudicial, but that's not the law, right? Like, we do do an analysis as to what, like, you know, there might be an erroneously admitted prior, you know, bad act evidence that's harmless. So it can't be that just it's like telling people in a drug trial that they got the placebo. It's not automatically prejudicial, right? I, you know, when I, when a jury hears it, the conclusion, the conclusion is almost immediate. He did it before, so everything I just heard. I mean, like I said, I understand that argument, and it's possible that, you know, we could have taken that position, but the law is that we do a harmless error analysis, and there is at least some category of erroneously admitted evidence that would, of this type that would not be prejudicial. So there needs to be more of a showing than just the inference that once the jury hears of that prior conviction, it's automatically prejudicial. If you're, are you asking, are you asking me about, I'm sorry. I wonder if we're not talking about two different meanings of the word prejudicial, right? I mean, clearly the evidence has inherently a prejudicial impact that has to be balanced as to its admissibility against whatever probative force it has, but then there's also prejudicial in the sense of that prejudicing the conviction being the opposite of harmless error. And I think that what Judge Benacci is mainly referring to is the second. I mean, it is, I think we all agree that there is inherently some prejudice here, but the question is, is it inherently so prejudicial as to warrant a finding that the error was harmful and therefore requires reversal? But isn't that also in the context of first, was there any probative value? Because if there's zero probative value. Right. And secondly, it's a question of in this case there was a proposed stipulation from the defense that would have allowed in the only thing that was probative, namely the things relating to his early release and so forth that he sought, and would have just excluded the underlying fact that he was convicted of the same crime and that was not accepted as a solution. Right. So there are two steps. One is what is the probative value, and we know what the prejudice is, and that gets balanced. And the second is if the balance was inaccurate, was it harmless error? And I guess I'd be interested in, the reason I wanted to clarify that, Ms. Wolf, was to hear your answer to why is this not harmless error. One factor might be, as you've said already, that you maintain that this is inevitably so explosive that it's kind of always not harmless. But if you were asked to put that in the context of balancing how strong was the government's case against that, what would you have to say to the proposition that the government's case was sufficiently strong that this really wouldn't matter? The government's case was not sufficiently strong. It was based on the testimony, it was based overwhelmingly on the testimony of a cooperating witness who had, there were a lot of reasons to question his testimony. And with respect to other testimony, like other evidence, like paperwork and texts, they relied on his interpretation of them to the jury. So you've got a one witness case. You have evidence of, which I don't think should have come in, but evidence of other drug seizures that had no connection at all to Mr. Lopez Castro. It, you know, it's not a case where a jury would be able to sit down in two hours and say, He must have done it. I guess my reaction to that is, why isn't what you're saying suggesting that actually the evidence was invisible? So it's true that there was testimony that this was part of a drug operation. Part of your client's defense was, actually I didn't know, I just thought that we were shipping furniture, right? So I didn't know that it was a drug operation. Wouldn't the evidence that he previously engaged in drug trafficking mean that he would understand how drug trafficking worked and he'd be less likely to be so naive as to inadvertently participate in a drug trafficking operation? Doesn't that, wouldn't that also be a basis for the evidence of, like we've said, you know, to show knowledge in the absence of mistake, you could introduce evidence of prior bad acts. The government made those arguments and Judge Casnell limited the evidence, gave a limiting instruction, which the government did not object to, that the conviction could be considered as background evidence regarding the trust between Guzman, Lester, and Lopez. Well, okay, I understand that that's what happened at the trial. But if we were to think that the evidence was admissible to show knowledge in the absence of mistake to rebut the contention that this was unknowing or innocent conduct, then the error would just be that the district court didn't explain precisely the reasons why the evidence could be admitted, but it was admissible anyway, and that would be pretty harmless because then that evidence would have gotten before the jury even in the absence of the error, right? Well, one, the government didn't preserve it by failing to object at the time or even argue that there should be a broader basis for the instruction. And two, the other basis, like intent, and let me just step back for a second. The arguments that defense counsel made at trial through cross-examination and in summation were based on the fact that the evidence of the prior conviction was coming in. Judge did not say, okay, it's not coming in right now, but if you open the door, it's coming in. It was a done deal by the time he was cross-examining the witnesses and doing a summation. If he had known that that testimony might trigger the admission of the prior conviction, he would not have argued that he didn't know he was participating in a drug trafficking operation. Is that right? Well, he may well have argued that the government did not prove it. Usually under those circumstances, you just avoid saying it directly. Yeah, I understand. Okay. Well, you've reserved time for rebuttal, so we'll hear from you again. I'm sorry. I just want to ask one question on a totally different issue that was raised in Appellant's brief, which is with respect to the speedy trial aspect. Why didn't you move for a severance? I addressed that extensively in the reply brief. By the time, it was implicit, and there was a point where it came up, and the defense counsel discussed it with the judge and said he's going to make a motion for a severance. And the judge explained the reasons why he wouldn't grant it. And that was at the same time that the government announced that the other defendants would be taking a plea. The statute is a little bit odd because it says, and no motion for a severance has been granted. It's ambiguous. It doesn't say, and no motion for a severance has been made. But our case law says that, right? That you can object to the exclusion of time that's given because of a co-defendant, only if you move for a severance, right? I'd submit that the language of the statute doesn't exactly say that. But our cases say that, is my point. And I guess the other question about the severance is, how can it be implicit if the defendant's counsel says to the district court, we are considering whether to move for a severance, and then doesn't? Like, wouldn't it be clear that a decision was made not to make the motion? How can you implicitly move for a severance when you say, I'm thinking about moving for a severance, and then you don't file the motion? I believe if my memory is correct, that there was actually a discussion about whether a severance would be granted, and Judge Castell made it pretty clear that it wouldn't. Yeah, but then don't you, picking up on arguments you made in the first point, isn't it obligatory on you then to make the motion, even if you know he's going to deny it? How else do you preserve it for appeal? One of the arguments that we made was that the motion, the speedy trial motion, a motion for a severance, is implicit. Because the defendant's saying, I want a speedy trial. I want to go to trial now. The other defendants can say, no, we don't want to be on that boat. I mean, if a motion for severance is implicit, whenever you object to the speedy trial exclusion with respect to a co-defendant, we would have never had occasion to say, but we did say that you can't object to a speedy trial exclusion for a co-defendant unless you've moved for a severance, right? So you're just suggesting that our case law is wrong, that we should not have any such objection to implicitly be saying that. I know I'm way over my time, but I believe there's a Second Circuit case in the briefs which discusses this. Okay. Well, as I said, you have reserved time for rebuttal, so we'll hear from you again. But let's turn to the government. Ms. Zverevich. Good morning, Your Honors. May it please the Court, Olga Zverevich for the United States. The judgment below should be affirmed. Judge Costell acted well within his broad discretion in admitting the prior conviction on the facts. And what's the probative value? I'm sorry? What's the probative value? Yes, Your Honor. Your Honor, the prior conviction here was admissible for at least three proper non-propensity purposes. The first is to explain how the defendant came to join this charged conspiracy and the conversation. That would be settled by the stipulation that was offered, right? In fact, they agreed to admit that the guys got to know each other in prison. This is not – I mean, the classic argument is if we just had to start the case with a man walks up to the defendant and says, you want to deal drugs with me, that would be hard to believe. So you have to explain what the background was. But they offered to stipulate to that background, right? They offered to stipulate to the fact that the defendant had a prior conviction but not the nature of the offense. So why would the nature of the offense – I mean, as the defense points out, I could see an argument that if the players, Guzman and Lester, knew that he was in prison for drugs, that might contribute to their trust. That seems like a reasonable proposition. But there's no connective link there, right? I mean, no one even asked – the prosecutor didn't ask either – and didn't elicit anything about what Lester might have known about what the nature of the conviction was. Your Honor, that is correct. There was no direct evidence on this point. However, as Judge Costell expressly found, it was a rational inference for the jury to make. A rational inference that you sort of know what your cellmate is in for. That's correct, Your Honor, especially considering that the trial record – First of all, why is that a rational inference? Because people are in jail for all sorts of things. And secondly, what is it that the conviction adds to that? Because the relevant probative was how he came to trust, not whether he had seen a piece of paper that said you're convicted of the very same crime you're being charged with here. Yes, Your Honor. Your Honor, it is – it was a rational inference because of the facts of what happens, which is Lester introduces the defendant to Guzman, who is Lester's longtime trusted associate. And immediately right off the bat in the very first meeting, the defendant and Guzman begin discussing drugs. Separate from that, there was evidence in the trial record that the defendant and Lester exchanged numerous messages about drugs. They were sending each other – So what does the conviction add to that? That they have already established that he assumes he's a drug dealer. He – they plan their new deal. He explains all of which the defense was prepared to stipulate that the defendant's going to get out early so he can facilitate this thing. None of this has anything to do with the fact that he was actually convicted of the very same crime. Your Honor, it had to do with helping the jury make sense of this set of facts. If the defendant was, as Judge Costell noted, you know, in jail on a tax evasion charge, it would make no sense for Lester to introduce him to his longtime drug associate. It would make no sense for this defendant to immediately begin discussing drugs. At least it would make less sense. Correct. So I guess your position would be it's much more plausible and it would make it much more likely that they would get together in jail and form a drug conspiracy if the other participants knew that this person knew about drug conspiracies and so therefore, you know, would have the relevant expertise. And if that makes it more plausible, you'd say the government's not required to stipulate the way it's cased by agreeing to a stipulation when, you know, getting the evidence in would make a stronger case before the jury. That's correct, Your Honor. And for purpose— Wait a minute. I'm still unclear. When there was no suggestion anywhere in the record that I saw that when this relationship began between the cooperator and the defendant, the cooperator said, oh, show me your conviction. Let me see the judgment because I suspect you might just be in for tax evasion. I want to know. I want to see the judgment or anything remotely like that. And so I don't see what material thing is added, whereas the propensity aspect is clear. And, you know, ladies and gentlemen, in this one witness case, just be sure you know that the defendant has been convicted of the very same crime. And if you have any doubt about it, ladies and gentlemen, let me tell you about it on summation. So— Your Honor, I would like to address those points. But what I'd like to point the court to in the record, which I think is a very important piece of evidence, which is that during the very first meeting between the defendant and Guzman, the defendant, before doing anything, before talking about anything, places a call to Lester in Guzman's presence to confirm that they are together. So essentially he uses Lester to validate the meeting, and then the two immediately pivot to discussing drugs. This shows that the relationship of trust that was formed in jail between Lester and the defendant was a very important part of this conspiracy. And Judge Castell certainly did not— Maybe, Ms. Herring, I still don't see, given that there was this clear instant trust, what added probative value of having the conviction added? There was never any question in their respective minds that they could be trusted to do a drug deal. So saying to the jury, oh, and by the way, we want you to know that not only did they have this instant trust, but years ago the defendant was convicted of the very same crime he's now being accused of and spent 10 years in prison for that or sentenced to 10 years in prison for that. And he's a drug trafficker, which you say like four times in your summation. Your Honor, what the court has to take into account is that this evidence came in through the testimony of Guzman, who was forcefully attacked as a liar throughout the trial. And therefore, the government was entitled to present evidence corroborating Guzman's testimony and explaining to the jury how that relationship of trust came to be. Yeah, so it's one thing to stipulate that there was a relationship of trust. It's another to explain the basis of it. It makes it much more plausible that they would have developed a relationship of trust, right? So like there is at least some probative value to showing that they trust each other because of kind of shared expertise or experience or, you know, possible utility in the kind of conspiracy that they're launching. Exactly, Your Honor. And the question about whether it's just evidence of a prior conviction, I guess you would say the evidence of the prior conviction is the evidence that the other people in prison would have known his background because it's a standard question when you meet people in prison, like what are you in for or whatever. And so that's the inference that's to be drawn. That's correct. And so did you say during the summation he did this before and therefore it's likely he did it this time? Absolutely not, Your Honor. Okay, so what about the – so I, you know, read some of the passages. I do think some of the times in the summation where it says he's a drug trafficker, what the government is talking about is he's a drug trafficker in this case, not that he was before. That's exactly right, Your Honor. But what about the passage that Judge Rakoff noted? What's the context of that? So there were several instances in which the government referred to getting back to work or having deep connections in the drug trafficking world. But those viewed in context, as Judge Costell explained in denying the defendant's Rule 33 motion, those were not arguing propensity. And that's because on the facts of this case, what the defendant did in getting out of jail is exactly what the government said, which is he leveraged his connections. Right after getting out from jail, the defendant told Guzman, hey, I'm going to move to terminate my probation so that I can travel to the DR to meet with a cocaine supplier. And by the way, I also have another supplier in Panama. And then he, in fact, leveraged those connections to actually traffic drugs in this charged case. So it also would have been less plausible that he could just get out of jail and start running this very significant and sophisticated drug trafficking operation, unless you understand that he already had some connections or some experience in that area. Absolutely, Your Honor. I have a different question that's actually a question. It happens rather frequently that a defendant is here arguing about the admission of evidence, and I think, well, when I was a trial judge, I would not have let that in. But we normally give a great deal of deference to the judge's balancing. So I want to ask a question about the judge's balancing here, because it seemed to me that the judge misunderstood the prejudice factor. In other words, what Judge Castell said about prejudice was, well, this isn't such a bad thing. I mean, it's not like you're on trial for shoplifting, and the government puts in evidence that you've previously been guilty of murder, so the jury immediately hates you and can't consider the evidence. That's not like that, because the prior conviction is for the same thing. I mean, it's no worse than the drug dealing that there's all kinds of evidence he did here. But that's not the prejudice, right? I mean, the prejudice is not that the jury will be inflamed by knowing that he's a child molester or a murderer or something. The prejudice is precisely the likelihood that the jury will treat the prior evidence, whether the government does the more or less unthinkable thing of actually saying we're putting this in as propensity evidence and then arguing to the jury that he did it before so he'll do it again, but that the jury will nevertheless not be able to get that out of its mind. And that wasn't really addressed. I mean, the judge treated it as if this couldn't be prejudicial because it's just the same crime that he's charged with here. So that gives me a little bit of concern about relying on deference to the district court's balancing because I think the judge was balancing what is an interesting question about the probative value against the wrong kind of prejudice, against something that isn't really what the prejudicial sting is. Your Honor, respectfully, I disagree with Your Honor's assessment. The district court had, you know, addressed this issue on three separate occasions, in the eliminate motions and then during the trial itself at sidebar and then in the Rule 33 context. The district court did make a statement that the conduct is not more inflammatory, but there is no question that it understood the defense's argument, which it made repeatedly as to the prejudicial value of this conviction in terms of the propensity inference. Did the judge refer to that at any point in balancing the probative and prejudicial issue? Refer to the propensity issue or even to say, well, I've given a curative instruction, so that's not really a problem? Your Honor, I would need to check the record to see about expressing it. But the judge did expressly instruct the jury that it cannot consider this evidence for propensity inference. When it says the thing about the inflammatory, I mean, I guess we have said that when you're introducing evidence of prior bad acts to complete the story and provide context and so on, it's a problem if the prior bad acts are more inflammatory than the charged crimes, because then we know that it would be more prejudicial than probative. So, like, it is part of our, maybe it's not the only consideration, but it is certainly a relevant consideration when we're doing that kind of a balance. That's exactly right, Your Honor. If the judge, so far as the record is concerned, failed to apply the correct standard of law as articulated by Judge Lynch a minute ago, that is automatically an abuse of discretion, is it not? Your Honor, there is no indication on the record whatsoever that Judge Costell misapplied the law on Rule 403 balancing. Oh, I mean, you just heard, and I, you may want to go back and check it. I'll go back and check. I don't recall that the correct legal standard dealing with the issue of propensity was referenced by him. It was raised by the defense, but instead he went off on the other aspect, which is also relevant but is not the whole law by any means, which is inflammatory aspect, and concluded that it was not inflammatory, and therefore admitted it's subject to a construction. But that was not, that's an aspect of the standard, but it's not the heart of the standard, and it particularly wasn't the heart of what was being raised by the defense. Your Honor, I think a fair reading of the record is that Judge Costell understood the defense's arguments about unfair prejudice and simply found, as was his discretion, that the probative value of the evidence on these particular facts was not substantially outweighed by that risk. And I just want to make sure that I get to the other two cases. Just to clarify that, and I guess we've already discussed on the record he is explaining what he thinks is the probative value of it, which is the relationship of trust and maybe some other things, and the inflammatory analysis is at least some piece of the analysis of whether it's unduly prejudicial. So it does seem from the record he's considering both sides of that question. Correct, Your Honor. If it is an error, then we had just talked about harmlessness. So you heard from opposing defense counsel that this would make a difference in the trial because the jury convicted him only because of the prior conviction. So what is your response to that? Your Honor, on the record in this case, any error to the extent the court concludes there was an error was harmless. The evidence of the defendant's guilt in this case was very strong, contrary to what defense counsel says, and the court can conclude with fair assurance that knowing the nature of the conviction, because the defendant offered to stipulate to the fact that there was a conviction, it's just about the nature of the conviction, did not substantially influence the jury. So first you have Guzman's testimony. He testified in detail about how the drug trafficking operation worked and how the defendant personally directed him to ship packages containing furniture with cocaine from Puerto Rico to the United States. You had law enforcement seizures of actual furniture with drugs shipped by the organization on other occasions, which corroborated that that's exactly how the organization operated. There was extensive documentary evidence corroborating Guzman's testimony about the defendant's involvement in this crime. There were messages between the defendant and Guzman showing that they formed a relationship of trust. Guzman repeatedly thanked the defendant right after meeting him for trusting him. They discussed other co-conspirators in those messages who were involved in the scheme, including Arito and Robert. They were speaking in coded messages that were clearly tailored to avoiding detection, such as Arito said for you to bring the vehicle down for him so we can wash it and shine it. The timing of the messages also was coordinated around the shipments that Guzman testified about. Conviction records, separate from the nature of the conviction, but the conviction records corroborated that the defendant in fact moved to terminate his supervised release, just as Guzman testified he had told him. There were shipping records in evidence showing that, in fact, three shipments of purported furniture were made from Puerto Rico to the United States. So doesn't all this show that the additional probative value, if any, of the underlying conviction was trivial and therefore the prejudice is really what stands out because you had overwhelming evidence of their trust and familiarity and all like that, but the only thing that the conviction really added was he's done it before, he's doing it again. That's what's forbidden. Your Honor, I respectfully disagree, and I know we discussed at length one of the bases for admitting the conviction. I do want to at least cover the other two so that I put it on the record. I guess you would agree that when we get to the harmlessness analysis, we are assuming that there was an error in the admission. Maybe it was. We're assuming for purposes of argument that the prejudicial value did outweigh the probative value. But you're just saying once we get to that point, that's when the rest of the evidence kicks in as showing it's harmless. That's correct. The error would not have affected the prejudicial value. So what about the other bases for admitting it? So is it a problem that that's not the actual reason the district court gave for admitting the prior conviction? No, Your Honor, because the law is clear that this court can affirm on any basis that finds support in the record. And also, as you, Judge Minasci, had mentioned, to the extent this court finds that this evidence was properly admitted for a ground on which the district court relied, any error in admitting it for another ground would have been harmless. Of course, the ground that Judge Minasci is raising was not even argued by you on summation. So now we have to infer that assuming arguendo, it was improperly admitted for the reasons stated by the judge, and that there was another silent reason why it was relevant, and that was never argued by you, either at the time when you sought the admission or in your summation or at any other time. But we should nevertheless infer that the jury somehow considered it for this allegedly proper reason. Your Honor, I would like to correct the record on this point. We expressly, in seeking admission of this evidence, argued this very point. So in the government's motion in limine at docket 458, one of the bases on which the government sought admission was to counter Lopez-Castro's anticipated defense at trial, that there were innocent explanations for his conduct. And moreover, at the final pretrial conference on October 26, 2023, this particular basis was, in fact, discussed with Judge Costell. I will direct your honors to page 41 of the transcript. That's a point in the conference where the government was arguing that the facts of the underlying conviction should come in because those facts were almost identical to his modus operandi in this case. And we argued that it was highly probative on the issue of intent, because we anticipated him to argue that it would be innocent conduct. Correct, Your Honor. So that was the basis. Yes. So what about the argument that defense counsel just made? Like, well, if that was the reason for the admission, he would have not said that. He would have not raised that as a defense. Well, Your Honor, in response to the government's argument on that point, Judge Costell responded, but I'm already allowing you to get the fact of the conviction in, period. So he was aware of this basis, and he deemed it sufficient that the conviction itself comes in rather than the facts of the conviction. So the defendant was on notice that this was a basis for admitting his testimony. The defendant was on notice it was coming in anyway, and so it wouldn't have an incentive to avoid that testimony. But the point you're making, which I think cuts against you, is the relevance for intent was not the fact of the conviction, but was the way the prior crime had been carried out. That would have required evidence far beyond the conviction, very different from the conviction. Your Honor, the government argued that both were relevant to intent, and in fact they are under this court's case. But it doesn't follow from the conviction does not say, here's how I carried out my earlier drug dealing. And I think that's what you were just saying was an alternative ground for its admission. Your Honor, under this court's published decisions, the fact nature of the conviction alone without any of the underlying facts were clearly probative on the issue of intent, whereas here the defendant squarely put that intent at issue at trial. So it might be more probative if the prior drug trafficking was, you know, identical to this drug trafficking. But it's at least somewhat probative if somebody knows about drug trafficking in general that he would have understood this drug trafficking. That's exactly right, Your Honor. And I would point the court specifically to this court's published decisions in Ramirez-Amaya as well as Martino. Ramirez-Amaya is particularly on point there. The court held that evidence that the defendant had previously attempted to import large quantities of drugs was admissible to rebut his claim that he did not intend to involve himself in the narcotics importation conspiracy charged in the case. That case is squarely on point here, as well as the Martino case that's cited in our briefs. And I would just note that here the defendant squarely put his intent at issue during the trial by arguing extensively that all of his associations with Guzman, with other co-conspirators, were innocent. The defendant thought he was washing up. I was asking what do we do with the defense, with the opposing counsel's argument that, well, maybe he wouldn't have provided that testimony if he didn't think that the prior conviction was coming in anyway. So what do we do with that? So it might be that just as Judge Castell said, well, I'm already letting you get the prior conviction in, so I don't need to admit it to rebut his anticipated defense. Why wouldn't the defendant then have made a calculation, well, then there's no advantage to me not making this defense because it's coming in anyway. So then maybe the trial would have been very different. Your Honor, I'm not sure that I'm fully following that. I mean, the defendant, you know, as the government said, expected to make that defense before trial. This was argued before Judge Castell. Judge Castell acknowledged the issue of intent as a basis for admitting the prior conviction records, and then the defendant, in fact, pressed on with this defense at trial. I mean, I guess you're suggesting it's just implausible that he would have not made that defense. That's correct, Your Honor, on the facts of this case. I will also just note, and I think that's also another alternative basis, and an important one in this case that I briefly touched on, which is the prior conviction here was admissible to show how the defendant had access to the staggering quantities of drugs that he trafficked in this case fresh out of jail after serving a 10-year sentence, and to corroborate Guzman's testimony on this point. Again, Guzman testified... I think we have that argument. You said, you know, it otherwise would be implausible that he could get out of jail and immediately run a big operation, but for the fact that he had those connections. I think we understand that. Okay. Thank you very much, Ms. Zvirovich. Thank you. We'll turn back to the appellant, Ms. Wolfe. Thank you. I want to... I think this came up early in the government's argument about the basis for trust, and Judge Costell addressed it three times, as the government says, and at one point he said that the evidence of the prior conviction, specific conviction, tended to make it more plausible that there would be a relationship of trust. But it would also, and perhaps even more so, make it more plausible if there had been an incident in prison and one of them had the other's back for which that person would be forever grateful. That would be a real basis of trust. To say that it's natural, it's just natural and probable, the drug traffickers would trust each other, I think that's a far other stretch. I mean, you're just talking about trust in general, but if the evidence is trying to show that they had enough trust to form a drug trafficking conspiracy, wouldn't it make it more plausible that they had that type of trust if the counterparties had a background in drug trafficking? I mean, maybe the prejudicial effect outweighs it, whatever, that's a different question, but at least it makes it more plausible that they would have the trust to form a drug trafficking conspiracy if they all had expertise in drug trafficking. But the problem with that is that wasn't the testimony of Guzman. He testified that he believed Lester was in prison for drugs and that Castro at some point told him he was in prison with Lester. He never said, Guzman wasn't asked and he never testified that, you know, I was willing to work with this guy because I knew from Lester that he'd been in the business before. That wasn't the testimony. So if he had said that, instead of just saying that, you know, we trust each other, he explained that that was the basis of the trust, would you then say that this, that the prior conviction would be relevant? It would be, you know, then the government might have an argument that the prior conviction is corroborating Guzman. But since Guzman didn't say it, then there's nothing to corroborate by bringing... Well, the idea that there's a relationship of trust and this is a possible basis of it, isn't that corroborative? I understand it might be better if he expressly said that that was the basis of it, but you could draw the inference that that is a basis of trust, right? It's, but I think it's speculative. There is, you know, there could be any number of reasons why there was a basis of trust. And when the government puts Guzman on the stand and doesn't ask him that, he doesn't say it, I think it's a reasonable inference that that wasn't part of his thought processes. Okay, thank you very much. Do you have one final point you want to make? Just that, you know, as a matter of fairness and due process, this is a case that should be, where the conviction should be vacated, and there should be a new trial. Also, one more thing, and it was Judge Manassi, the case I was thinking about before was United States v. Vasquez, where this court, I skipped over to the speedy trial, where this court discussed the lack of unanimity on the question of what no motion for a severance been granted means. Okay, I understand that. Thank you, Your Honor. Thank you very much, Ms. Wolfe. The case is submitted.